**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,** 455 Massachusetts Ave., N.W. Washington, D.C. 20001, <br><br>**ANNE L. WEISMANN** 6117 Durbin Road Bethesda, MD 20817, <br><br>Plaintiffs, <br><br>v. <br><br>**FEDERAL ELECTION COMMISSION** 999 E Street., N.W. Washington, D.C. 20463, <br><br>Defendant. | Civil Action No. |

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

1. This is an action for injunctive and declaratory relief under the Federal Election Campaign Act of 1971 ("FECA" or "the Act"), 52 U.S.C § 30109(a)(8)(C), and the Administrative Procedure Act, 5 U.S.C. § 706, challenging as arbitrary, capricious, an abuse of discretion, and contrary to law the dismissal by the Federal Election Commission ("FEC" or "Commission") of an administrative complaint by Citizens for Responsibility and Ethics in Washington ("CREW") and Anne L. Weismann (collectively "Plaintiffs") against Unknown Respondent(s) for violating the FECA's ban on making political contributions in the name of another. This action seeks to remedy the injuries to Plaintiffs and the public resulting from "an egregious example of someone using a web of organizations to hide the true source of a $1.7 million contribution to a super PAC – and getting away with it." *In the Matter of Amer.*

*Conservative Union, et al.*, Statement of Reasons of Comm'r Ellen L. Weintraub 1, MUR No. 6920 (Dec. 19, 2017) (attached as Exhibit 1).

2.  As found by the FEC's Office of General Counsel ("OGC"), funds that were originally reported by Now or Never PAC as a contribution from a social nonprofit organization, American Conservative Union ("ACU"), actually originated from an unknown source and were passed through ACU and a previously undisclosed LLC, Government Integrity, LLC ("GI LLC"), before they reached their ultimate destination, the PAC, which used the funds to pay for political ads.  Third General Counsel's Report 2–3, MUR No. 6920 (Sept. 15, 2017) (attached as Exhibit 2).  The use of these pass-throughs and the wrongful attribution of the contribution as originating with ACU had the effect of hiding the true source of the funds Now or Never PAC used to pay for its political ads.  The Commission ultimately entered into a conciliation agreement with ACU, GI LLC, Now or Never PAC, and James C. Thomas III, the treasurer for Now or Never PAC and counsel for GI LLC, fining them $350,000 for their actions.  *See* Conciliation Agreement, MUR No. 6920 (Oct. 31, 2017) (attached as Exhibit 3).

3.  Nevertheless, by a split decision, the Commission failed to adopt the OGC's recommendation to find reason to believe two additional participants in the pass-through scheme, the John Doe Trust and its trustee, John Doe Trustee (collectively, the "John Doe entities"), violated the FECA.  *See* Certification, MUR No. 6920 (Sept. 21, 2017) (attached as Exhibit 4).  The true identities of the John Doe Trust and the John Doe Trustee are currently unknown to Plaintiffs.[1]  Moreover, because the Commission also split on whether to adopt the OGC's recommendation to enforce outstanding subpoenas, the FEC failed to ascertain whether the John

---

[1] Pursuant to a court order, the FEC is not currently able to disclose the name of the trust or identity of the trustee.  Accordingly, the FEC materials that identify the true name of the John Doe Trust and John Doe Trustee are redacted.  *See, e.g.*, Certification 1 (Sept. 21, 2017), Ex. 4.

Doe Trust was merely a pass-through itself or was the true source of the contribution to Now or Never PAC, and thus did not conclude whether the John Doe Trust is an Unknown Respondent alleged in CREW's complaint or whether some other entity or entities are the alleged Unknown Respondent(s).  Those failures resulted in the dismissal of Plaintiffs' complaint.

4. On December 20, 2017, nearly two months after closing the file on Plaintiffs' complaint, two of the three commissioners who refused to adopt the OGC's recommendation to find reason to believe and to enforce the subpoenas issued a statement of reasons to explain their vote.  Statement of Reasons of Vice Chair Caroline C. Hunter and Comm'r Lee E. Goodman, MUR No. 6920 (Dec. 20, 2017) (attached as Exhibit 5).  While congratulating themselves for setting "clear precedent" that the ban on pass-throughs applies to social welfare nonprofits, *id.* at 5, they refused to take any position on the use of LLC's (or trusts) as pass-throughs, arguing the very lack of clarity in the law prevented them from doing their jobs to clarify the law, *id.* at 2–3.  Their statement fails to provide a reasonable basis for dismissal and rests on impermissible interpretations of law.  Thus, their failure to find reason to believe the John Doe Trust and John Doe Trustee violated the FECA, their failure to pursue an investigation into the true source of the contribution and the identity of the Unknown Respondent(s), and the dismissal that resulted from those failures are contrary to law.

## JURISDICTION AND VENUE

5. This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 52 U.S.C. § 30109(a)(8)(A) and 5 U.S.C. § 702.  This Court also has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 2201(a), and 2202.  Venue lies in this district under 52 U.S.C. § 30109(a)(8)(A) and 28 U.S.C. § 1391(e).

**PARTIES**

6. Plaintiff CREW is a non-profit, non-partisan corporation organized under Section 501(c)(3) of the Internal Revenue Code.

7. CREW is committed to protecting the right of citizens to be informed about the activities of government officials, ensuring the integrity of government officials, protecting our political system against corruption, and reducing the influence of money in politics. CREW works to advance reforms in the areas of campaign finance, lobbying, ethics, and transparency. Further, CREW seeks to ensure that campaign finance laws are properly interpreted, enforced, and implemented.

8. To advance its mission, CREW uses a combination of research, litigation, advocacy, and public education to disseminate information to the public about public officials and their actions, and the outside influences that have been brought to bear on those actions. A core part of this work is examining and exposing the special interests that have influenced our elections and elected officials and using that information to educate voters regarding the integrity of public officials, candidates for public office, the electoral process, and our system of government.

9. Toward this end, CREW monitors the activities of those who run for federal office as well as those groups financially supporting candidates for office or advocating for or against their election. CREW regularly reviews campaign finance reports that groups, candidates, and political parties file with the FEC disclosing their expenditures and, in some cases, their contributors. Using the information in those reports, CREW, through its website, press releases, reports, and other methods of distribution, publicizes the role of these individuals

and entities in the electoral process and the extent to which they have violated federal campaign finance laws.

10. CREW also files complaints with the FEC when it discovers violations of the FECA. Publicizing violations of the FECA and filing complaints with the FEC serve CREW's mission of keeping the public, and voters in particular, informed about individuals and entities that violate campaign finance laws and deterring future violations of campaign finance laws.

11. CREW is hindered in carrying out its core programmatic activities when those individuals and entities that attempt to influence elections and elected officials are able to keep their identities hidden. Likewise, the FEC's refusal to properly administer the campaign finance laws, particularly the FECA's reporting requirements, hinders CREW in its programmatic activity, as compliance with those reporting requirements often provides CREW with the only source of information about those individuals and groups funding the political process. As a result of the FEC's refusal to enforce the FECA, organizations and individuals are able to launder their contributions through third parties. This deprives CREW of information critical to advancing its ongoing mission of educating the public to ensure the public continues to have a vital voice in our political process and government decisions.

12. As part of CREW's work in carrying out its central mission CREW focuses on so-called "pay-to-play" schemes. Toward that end, CREW looks for correlations between donations to the campaign of a member of Congress or candidate and that member's subsequent congressional activities, including advocating for policies and legislation that serve the interests of the member's donors. Information that an individual or entity made a large-dollar contribution may be very revealing about the influences that donor has brought to bear on the member post-election. Without information about the individuals and entities funding the

political activities of organizations and individuals, CREW is stymied in fulfilling its central mission.

13. As an example, in May 2013, CREW issued a report, *Rise of the Machines*, detailing the growing political influence of high-frequency traders in Washington. CREW's analysis was based in large part on the lobbying and campaign contribution records of 48 companies specializing in high frequency trading. That data revealed that between the 2008 and 2012 election cycles, the campaign contributions of these firms increased by 673 percent, from $2.1 million during the 2008 election cycle to $16.1 million during the 2012 cycle. CREW was able to obtain this information because of the disclosure requirements to which the organizations receiving those contributions – federal candidates, party committees, PACs, and super PACs – are subject under the FECA.

14. As another example, CREW published *Stealth Donors*, a December 2012 report on donors who gave more than $1,000,000 to super PACs trying to influence the 2012 election. The report revealed a dozen donors with policy or business interests that depended on the outcome of the elections, but whose efforts to sway voters largely were out of the public view. CREW obtained the information used in this report from information the FECA requires political committees to disclose.

15. At the time the administrative complaint underlying this case was filed, plaintiff Anne L. Weismann was CREW's Interim Executive Director, and she currently is CREW's Chief FOIA Counsel. She is a citizen of the United States and a registered voter and resident of the state of Maryland. As a registered voter, Ms. Weismann is entitled to receive all the information the FECA requires those engaged in political activities to report publicly. She is further entitled to the FEC's proper administration of the provisions of the FECA. Ms.

Weismann is harmed in exercising her right to an informed vote when a political committee fails to report the true source of its contributions, as the FECA requires.

16. When Plaintiffs file complaints against violators of the FECA, they rely on the FEC, as the preliminary civil enforcement authority, to comply strictly with the FECA when making its enforcement decisions. *See* 52 U.S.C. § 30107(e). Plaintiffs are harmed and are "aggrieved" parties when the FEC dismisses their complaints contrary to the FECA, refuses to enforce the FECA's mandatory disclosure requirements, or otherwise acts contrary to the requirements of the FECA. *See* 52 U.S.C. § 30109(a)(8)(C).

17. Defendant FEC is the federal agency established by Congress to oversee the administration and civil enforcement of the FECA. *See* 52 U.S.C. §§ 30106, 30106(b)(1).

## STATUTORY AND REGULATORY BACKGROUND

18. The FECA imposes a number of disclosure requirements to ensure the public and voters are fully apprised of election-related spending. In particular, the law requires organizations that engage in significant electioneering, called "political committees," *see* 52 U.S.C. § 30101(4); *Buckley v. Valeo*, 424 U.S. 1, 79 (1976), to disclose the source of their contributions, 52 U.S.C. § 30104(b)(3)(A).

19. To ensure the public learns the true-source of a contribution and to prevent the reporting of a mere pass-through entity as that source, the FECA and FEC regulations prohibit making a contribution in the name of another person, knowingly permitting one's name to be used for the purpose of making a contribution in the name of another person, and knowingly accepting a contribution made by one person in the name of another person. Specifically, 52 U.S.C. § 30122 provides: "No person shall make a contribution in the name of another person or

knowingly permit his name to be used to effect such a contribution, and no person shall knowingly accept a contribution made by one person in the name of another person."

20. FEC implementing regulations echo these prohibitions on making a contribution in the name of another, knowingly permitting one's name to be used to effect a contribution, knowingly helping or assisting another to do so, and knowingly accepting a contribution made by one person in the name of another person. 11 C.F.R. § 110.4(b). The regulation includes, as an example of a prohibited contribution, giving money, "all or part of which was provided to the contributor by another person (the true contributor) without disclosing the source of money[.]" *Id.* at § 110.4(b)(2).

21. Under the FECA, any person who believes there has been a violation of the Act may file a sworn complaint with the FEC. 52 U.S.C. § 30109(a)(1). Based on the complaint, the response from the person or entity alleged to have violated the Act, facts developed by the Office of General Counsel ("OGC"), and any OGC recommendation, the FEC then votes on whether there is "reason to believe" a violation of the FECA has occurred. 52 U.S.C. § 30109(a)(2). A "reason to believe" exists where a complaint "credibly alleges" a violation of the FECA "may have occurred." FEC, Statement of Policy Regarding Commission Action in Matters at the Initial Stage in the Enforcement Process, 72 Fed. Reg. 12545, 12545 (Mar. 16, 2007). If four commissioners find there is "reason to believe" a violation of the FECA has occurred, the FEC must notify the respondents of that finding and "shall make an investigation of such alleged violation." 52 U.S.C. § 30109(a)(2).

22. If four commissioners fail to find reason to believe a violation of the FECA has occurred and the Commission then dismisses the matter, the complainant, as a "party aggrieved" by the dismissal, may seek judicial review of the failure to find reason to believe in the United

States District Court for the District of Columbia. 52 U.S.C. § 30109(a)(8)(A). All petitions from the dismissal of a complaint by the FEC must be filed "within 60 days after the date of the dismissal." 52 U.S.C. § 30109(a)(8)(B).

23. The district court reviewing the FEC's dismissal of a complaint may declare the FEC's actions "contrary to law." 52 U.S.C. § 30109(a)(8)(C). The court also may order the FEC "to conform with such declaration within 30 days." *Id.* If the FEC fails to abide by the court's order, the FECA provides the complainant with a private right of action, brought in the complainant's own name, "to remedy the violation involved in the original complaint." *Id.*

## FACTUAL BACKGROUND

24. On February 27, 2015, Plaintiffs filed a complaint with the FEC against ACU, Now or Never PAC (a political committee), James C. Thomas III (in his capacity as Treasurer of Now or Never PAC), and Unknown Respondent ("MUR 6920"). The complaint alleged that ACU permitted its name to be used to effect a contribution in the name of another person, by acting as a conduit to contribute $1.7 million to Now or Never PAC, in violation of 52 U.S.C. § 30122. The complaint further alleged that Now or Never PAC knowingly accepted a contribution from ACU in the name of another, in violation of 52 U.S.C. § 30122. Finally, the complaint alleged that Unknown Respondent, the "true source" of the funds ultimately donated to Now or Never PAC, violated 52 U.S.C. § 30122 by contributing to Now or Never PAC in the name of ACU.

25. Specifically, Plaintiffs' complaint alleged that Now or Never PAC disclosed receiving $8,200,500 in contributions in the 2012 election cycle, the largest being a $1,710,000 contribution from ACU. The vast majority of Now or Never PAC's spending went towards its independent expenditures. Despite this report by Now or Never PAC, ACU first reported in its

9

tax filings that it engaged in no direct or indirect political campaign activities.  About two years after Now or Never PAC's report, in May 2014, ACU's amended 2012 tax return reported the contribution to Now or Never PAC.  However, this tax return stated that the funds did not originate with ACU.  Rather, according to ACU's amended tax return, ACU admitted to acting as a conduit for a contribution earmarked to Now or Never PAC, stating that "$1,710,000 was a political contribution received by the Organization and promptly and directly delivered to a separate political organization."  In violation of the FECA, neither ACU nor Now or Never PAC had identified the source of the funds that flowed through ACU to Now or Never PAC.

26.     Based on Plaintiffs' complaint, the FEC conducted an investigation which uncovered that, on October 31, 2012, ACU received $1.8 million from GI LLC.  On the very same day ACU received the funds from GI LLC, it sent $1.71 million of the money it received from GI LLC to Now or Never PAC.  Thomas, who was GI LLC's attorney as well as Now or Never PAC's treasurer, transferred the funds from GI LLC and received them at Now or Never PAC.  Correspondence between individuals at ACU and Thomas confirmed everyone knew the purpose of the transfer to ACU was to send the funds to Now or Never PAC, stating that ACU would "take action immediately upon receipt." Conciliation Agreement ¶ 9, Ex. 3, *see also* Weintraub Statement 2, Ex. 1.

27.     The FEC's investigation also uncovered, however, facts to show GI LLC was not the true source of these funds either.  The investigation shows that on October 31, 2012—the same day GI LLC contributed funds to ACU to pass on to Now or Never PAC—John Doe Trust, through John Doe Trustee, transferred $2.5 million to GI LLC.  GI LLC had only been formed a few weeks earlier, in September 2012, and its "only known organizational purpose was to support conservative organizations and causes."  Third General Counsel's Report 4, Ex. 2.  The

John Doe Trust or John Doe Trustee "funded GI LLC." *Id.* at 5.  Thomas's correspondence once again confirms that GI LLC itself was merely a pass-through, stating that "[t]he 2.5 million is here [at GI LLC]. I am about to wire the $1.8 million to American Conservative Union." *Id.* at 6; *accord* Weintraub Statement 2 n.5, Ex. 1.

28.     Due to the stonewalling of the respondents and their obstruction of the FEC's investigation, the FEC was unable to identify whether the John Doe Trust was the true source of the funds, or whether it was merely a pass-through itself for some other entity or entities.  Weintraub Statement 2, Ex. 1 (noting subpoenaed witnesses "refused to cooperate"); Third General Counsel's Report 5-6.  Nevertheless, three commissioners of the FEC voted against enforcing the FEC subpoenas against the uncooperative witnesses, Certification (Sept. 21, 2017) 1, Ex. 4, thereby stymieing the investigation into the true source of the contribution to Now or Never PAC, Weintraub Statement 2, Ex. 1.

29.     Following this investigation, the FEC found reason to believe that GI LLC, ACU, Now or Never PAC, and James C. Thomas, III (in his capacity as treasurer of Now or Never PAC) violated 52 U.S.C. § 30122.  The FEC further found reason to believe that Now or Never PAC and Thomas also violated 52 U.S.C. § 30104(b)(3)(A).  Certification, MUR No. 6920 (July 12, 2017) (attached as Exhibit 6); Certification, MUR No. 6920 (Jan. 24, 2017) (attached as Exhibit 7).

30.     On October 31, 2017, the FEC entered into a conciliation agreement with the respondents ACU, Now or Never PAC, Thomas, and GI LLC.  Per this agreement, GI LLC, ACU, Now or Never PAC, and Thomas, agreed not to contest the Commission's conclusion they violated 52 U.S.C. § 30122, and Now or Never PAC and Thomas agreed not to contest violating section 30104(b)(3)(A).

11

31. The FEC's Office of General Counsel also recommended that the Commission find reason to believe that the John Doe Trust and John Doe Trustee violated 52 U.S.C. § 30122 by making or assisting in the making of a contribution in the name of another. Third General Counsel's Report 9–15, Ex. 2. However, on September 20, 2017, the FEC failed, by a vote of 2-3, to find reason to believe. *See* Certification (Sept. 21, 2017) 1, Ex. 4. The same three commissioners who refused to vote to enforce the FEC's subpoenas were also the ones who refused to vote to approve the OGC's recommendation to find reason to believe the John Doe Trust and John Doe Trustee violated the FECA. *Id.* at 2.

32. On October 24, 2017, the Commission voted to close the file and dismiss Plaintiffs' complaint. Certification, MUR No. 6920 (Oct. 24, 2017) (attached as Exhibit 8).

33. On December 19, 2017, Commissioner Ellen Weintraub, who voted to find reason to believe against the John Doe entities and to enforce the outstanding subpoenas, issued a Statement of Reasons. She noted that, by reason of the failure of the other commissioners to pursue the case, "whoever concocted this elaborate scheme—in which money was funneled through at least four organizations (that we know of) in order to influence elections—succeeded in hiding their identity from the American public." Weintraub Statement 1, Ex. 1. She also noted that the reason the Commission was only considering the 2012 contribution so many years later was because "[t]he information underlying the complaint did not surface until years after the events took place" due to ACU's false IRS filings and due to the failure of respondents to report the true source of the contribution, because the respondents engaged in "deliberate [acts of] concealment" during the investigation, and because "the Commission failed to act for a full year" after it received the OGC's first set of recommendations. *Id.* at 3. Due to pending

litigation, Commissioner Weintraub redacted the names of the John Doe entities from her statement. *Id.* at 2.

34. On December 20, 2017, two of the three commissioners who voted against finding reason to believe the John Doe entities violated the FECA and against enforcing the subpoenas issued a Statement of Reasons. Hunter, Goodman Statement, Ex. 5. The two commissioners argued it was unclear whether the FECA's ban on contributions in the name of another would apply to LLCs like GI LLC and "[i]t would have been unfair and possibly inefficient to pursue enforcement against [redacted] for engaging in similar conduct where the issue was not clear, we had dismissed similar legal theories against other persons, and a federal court is currently reviewing the reasonableness of our action." *Id.* at 2. The two commissioners therefore decided not to clarify the law. Rather, based on these concerns, the two commissioners decided to abdicate enforcement of the conduit contribution laws to LLCs, refusing even to clarify the law for other contributors who may use LLCs to deprive Plaintiffs (and the public) of access to the identity of the true source of contributions.

35. In addition, the two commissioners, citing the "risk" of the running of the statute of limitations, argued in favor of entering a conciliation agreement with the four disclosed entities immediately. *Id.* at 3–4. The two commissioners never explained why an investigation into the John Doe entities and any other Unknown Respondent(s) would prevent entry and enforcement of the conciliation agreement with the disclosed parties. Nor did they explain how the statute of limitations—which would only prevent entry of a civil penalty if it ran but would not prevent the FEC from requiring disclosure of the true source of the contribution—justified their refusal to vote to enforce outstanding subpoenas. Rather, the controlling commissioners voted to end the investigation leaving Plaintiffs and the public little better off than they were

previously: possessing the name of another straw donor but still in the dark about the true source of the contribution used to fund Now or Never PAC.

## PLAINTIFFS' FIRST CLAIM FOR RELIEF

**The FEC's Failure to Find Reason to Believe that John Doe Trust and John Doe Trustee Violated 52 U.S.C. § 30122 and 11 C.F.R. § 110.4(b) was Arbitrary, Capricious, an Abuse of Discretion, and Contrary to Law**

36. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as fully set forth herein.

37. The evidence in the records shows the John Doe Trust and John Doe Trustee made a contribution or assisted in the making of a contribution to Now or Never PAC by routing that contribution first through GI LLC and then through ACU, without any respondent disclosing the John Doe Trust as the source of the funds, in violation of 52 U.S.C. § 30122 and 11 C.F.R. § 110.4(b). Accordingly, the three commissioners' refusal to vote to find reason to believe the John Doe Trust and John Doe Trustee violated the FECA was arbitrary and capricious, an abuse of discretion, and contrary to law.

38. The statement by two of the three commissioners who voted against the OGC's recommendation to find reason to believe the John Doe Trust and John Doe Trusted violated 52 U.S.C. § 30122 and 11 C.F.R. § 110.4(b) fails to adequately justify their vote not to find reason to believe and relies on impermissible interpretations of law. Furthermore, the third commissioner has failed to provide any reason to justify his vote. Accordingly, the three commissioners' refusal to vote to find reason to believe the John Doe Trust and John Doe Trustee violated the FECA was arbitrary and capricious, an abuse of discretion, and contrary to law.

39. Plaintiffs are therefore entitled to relief in the form of a declaratory order that defendant FEC is in violation of its statutory responsibilities under 52 U.S.C. § 30109(a)(8) and 5 U.S.C. § 706, and has acted arbitrarily and capriciously, abused its discretion, and acted contrary to law in dismissing MUR 6920.

## PLAINTIFFS' SECOND CLAIM FOR RELIEF

### The FEC's Dismissal of Plaintiffs' Complaint Without Identifying the True Source of the Funds Contributed to Now or Never PAC was Arbitrary, Capricious, an Abuse of Discretion, and Contrary to Law

40. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as fully set forth herein.

41. Plaintiffs' complaint identified as an "Unknown Respondent" the "true source" of the funds that were passed-through ACU and ultimately contributed to Now or Never PAC.

42. The FEC investigation revealed GI LLC was an additional pass-through entity of the funds and that it received its funds from John Doe Trust.

43. Nevertheless, the FEC investigation has neither confirmed that the John Doe Trust was the true source of the contribution nor identified the true source of the contribution if it originated elsewhere.

44. The FEC's dismissal of Plaintiffs' complaint against this Unknown Respondent(s) who is the true source of the funds, and who was not identified as the source of the contribution in violation of 52 U.S.C. § 30122 and 11 C.F.R. § 110.4(b), is arbitrary, capricious, an abuse of discretion, and contrary to law.

45. Further, three commissioners voted against authorizing the enforcement of subpoenas against uncooperative witnesses stymied the FEC's investigation and led to the dismissal of the complaint against the Unknown Respondent(s) who is the true source of the

contribution. The statement by two of those three commissioners fails to offer an adequate explanation of justification for their vote and relies on impermissible interpretations of law. The third commissioner has failed to issue any statement. Accordingly, their votes and the dismissal were arbitrary, capricious, an abuse of discretion, and contrary to law.

46. Plaintiffs are therefore entitled to relief in the form of a declaratory order that defendant FEC is in violation of its statutory responsibilities under 52 U.S.C. § 30109(a)(8) and 5 U.S.C. § 706, and has acted arbitrarily and capriciously, abused its discretion, and acted contrary to law in dismissing MUR 6920

## **REQUESTED RELIEF**

WHEREFORE, Plaintiffs respectfully respect that this Court:

(1) Declare that the FEC's dismissal of Plaintiffs' complaint against Unknown Respondent(s), including the John Doe Trust, the John Doe Trustee, and the as-yet unidentified true source of the contribution to Now or Never PAC, was arbitrary, capricious, an abuse of discretion, and contrary to law.

(2) Order the FEC to conform to such declaration within 30 days pursuant to 52 U.S.C. § 30109(a)(8)(C);

(3) Award Plaintiffs their costs, expenses, and reasonable attorneys' fees in this action; and

(4) Grant such other and further relief as the Court may deem just and proper.

Respectfully submitted,

_____
Stuart C. McPhail
(D.C. Bar No. 1032529)
smcphail@citizensforethics.org

16

                                  Adam J. Rappaport
                                  (D.C. Bar No. 479866)
                                  arappaport@citizensforethics.org
                                  Anne L. Weismann
                                  (D.C. Bar No. 298190)
                                  aweismann@citizensforethics.org
                                  Citizens for Responsibility and Ethics
                                      in Washington
                                  455 Massachusetts Ave., N.W.
                                  Washington, D.C.  20001
                                  Phone: (202) 408-5565
                                  Facsimile: (202) 588-5020

December 22, 2017
Attorneys for Plaintiffs