# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, *et al.*, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 17-2770 (ABJ) |
| FEDERAL ELECTION COMMISSION, | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION

Plaintiffs Citizens for Responsibility and Ethics in Washington and Anne L. Weismann, CREW's former Interim Executive Director and current Chief FOIA Counsel (collectively "CREW"), have sued the Federal Election Commission ("FEC") in connection with the Commission's resolution of an administrative complaint that CREW filed with the agency in 2015. In the administrative complaint it filed with the FEC, CREW alleged that a non-profit organization, American Conservative Union ("ACU"); a political action committee, Now or Never PAC; the PAC's treasurer, James C. Thomas III; and an "Unknown Respondent" violated the Federal Election Campaign Act ("FECA" or "the Act"), 52 U.S.C. § 30101 *et seq.*, by making a $1.71 million campaign contribution from an undisclosed source. The Commission investigated the matter and found that the contribution passed through a previously undisclosed organization, Government Integrity, LLC. It ultimately negotiated a conciliation agreement with ACU, the PAC, Thomas, and Government Integrity. The Commissioners unanimously approved the conciliation agreement and closed the administrative matter.

CREW filed suit against the Commission, asserting that its handling of the matter violated FECA and the Administrative Procedure Act ("APA"). Specifically, CREW contends that the agency improperly disposed of the administrative complaint without proceeding further to ensure that its investigation encompassed the true sources of the contribution, the individuals or entities that provided the money to Government Integrity that was passed to ACU. CREW contends that the agency should have pursued leads developed during its investigation in accordance with the recommendations of the Office of General Counsel, and it questions the Commission's decision to curtail the investigation in the wake of the conciliation agreement.

The Commission has moved to dismiss the complaint arguing that the Court has no jurisdiction to hear it, and the Court agrees.

Section 30109(a)(1) of FECA authorizes any person who believes a violation of the statute has occurred to file a complaint with the agency. Significantly, under the statute, if the Commission determines that there is probable cause to believe that any person has committed a violation of the Act, it is *required* to attempt to correct or prevent the violation through a process of conciliation.

The judicial review provision in the statute, subsection (a)(8)(A), states that "[a]ny party aggrieved by an order of the Commission dismissing a complaint filed by such party . . . or by a failure of the Commission to act on such . . . may file a petition with the United States District Court for the District of Columbia."

The FEC is correct that neither of these events took place here. CREW's administrative complaint was brought against three named respondents and one unknown respondent. There was no failure to act on plaintiff's complaint, and the complaint against the four respondents – three named and one unknown – was not dismissed; it was resolved by the conciliation process

called for by the statute. Since nothing in the statute gives the Court the power to review investigative decisions made along the way if an administrative complaint was neither dismissed nor ignored, the Court concludes that the challenged agency action is not reviewable under FECA. It further finds that the agency's actions in this circumstance are not reviewable under the APA, and therefore, the Court will grant defendant's motion to dismiss for lack of subject matter jurisdiction. Thus, this opinion will not address, and it should not be interpreted as expressing agreement with, or any view about, the propriety of the agency's actions.

## BACKGROUND

### I. Statutory Framework

The Federal Election Campaign Act is a statute that requires extensive recordkeeping and disclosure of campaign contributions in an effort "to remedy any actual or perceived corruption of the political process." *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 14 (1998). To this end, it prohibits "mak[ing] a contribution in the name of another person or knowingly permit[ting] his name to be used to effect such a contribution" or "knowingly accept[ing] a contribution made by one person in the name of another person." 52 U.S.C. § 30122.

The Federal Election Commission is an independent federal agency with exclusive jurisdiction over civil enforcement of FECA. 52 U.S.C. §§ 30106(b)(1), 30107(a), 30109. FECA authorizes the Commission to investigate violations of the Act. *Id.* § 30107(a). It also provides that "[a]ny person who believes a violation of th[e] Act . . . has occurred, may file a complaint with the Commission." 52 U.S.C. § 30109(a)(1). If, upon receiving an administrative complaint, the Commission determines "by an affirmative vote of 4 of its members, that it has reason to believe" the Act has been violated, the Commission must investigate the allegation. *Id.* § 30109(a)(2). The general counsel of the agency recommends whether the Commission should

proceed to a vote "on probable cause," and the respondent may submit information and briefs to the Commission as part of the investigation. *Id.* § 30109(a)(3).

If the Commission finds "by an affirmative vote of 4 of its members, that there is probable cause to believe that any person" has violated FECA, the statute requires the Commission to

> attempt, for a period of at least 30 days, to correct or prevent such violation by informal methods of conference, conciliation, and persuasion, and to enter into a conciliation agreement with any person involved. Such attempt by the Commission to correct or prevent such violation may continue for a period of not more than 90 days. The Commission may not enter into a conciliation agreement under this clause except pursuant to an affirmative vote of 4 of its members. A conciliation agreement, unless violated, is a complete bar to any further action by the Commission, including the bringing of a civil proceeding under paragraph (6)(A).

*Id.* § 30109(a)(4)(A)(i).

FECA authorizes an administrative complainant, such as CREW, to seek judicial review of the Commission's handling of its complaint in only two circumstances:

> Any party aggrieved by an order of the Commission dismissing a complaint filed by such party under paragraph (1), or by a failure of the Commission to act on such complaint during the 120-day period beginning on the date the complaint is filed, may file a petition with the United States District Court for the District of Columbia.

*Id.* § 30109(a)(8)(A). CREW does not allege here that the Commission failed to act on its complaint; it complains that it was aggrieved by "the dismissal" of its administrative complaint. Compl. [Dkt. # 1] ¶ 1.

## II. Factual Background

On February 27, 2015, the FEC received an administrative complaint from plaintiffs alleging that ACU, Now or Never PAC, its treasurer Thomas, and an unknown respondent violated the Federal Election Campaign Act when ACU contributed $1.71 million it had received

4

from the unknown respondent to Now or Never PAC. Compl. ¶¶ 24–25; Administrative Compl., Ex. A to Pls.' Opp. to Def.'s Mot. to Dismiss [Dkt. # 29-3] ("Admin. Compl.") ¶ 27 (asserting that "[t]he Unknown Respondent provided to ACU the $1.71 million it in turn transferred to Now or Never PAC"); *see also* First General Counsel's Report, Ex. B. to Pls.' Opp. to Def.'s Mot. to Dismiss [Dkt. # 29-4] at 1–2.

The agency initiated an investigation based on the complaint, Matter Under Review ("MUR") 6920, and in the course of the investigation, it identified Government Integrity as the unknown respondent that had contributed to ACU. Compl. ¶¶ 2, 26; *see also* Second General Counsel's Report, Ex. C. to Pls.' Opp. to Mot. Dismiss. [Dkt. # 29-5] at 1–2; Third General Counsel's Report, Ex. 2 to Compl. [Dkt. # 1-2] at 1–2.

The FEC's Office of General Counsel ("OGC") learned through discovery that a trust that had a relationship with Government Integrity transmitted funds to Government Integrity; that Government Integrity wired $1.8 million to ACU; and that on the day it received the wire, ACU sent the $1.7 million contribution at issue in the investigation to the Now or Never PAC. Compl. ¶¶ 2, 26–27; Third General Counsel's Report at 2–5; Circulation of Discovery Documents, Ex. E. to Pls.' Opp. to Def.'s Mot. to Dismiss [Dkt. # 29-7] at 2.

On July 11, 2017, the Commission voted 5 to 0 to "[s]ubstitute the name Government Integrity LLC in the place of 'Unknown Respondent' in the Commission's previous findings that Unknown Respondent violated 52 U.S.C. § 30122 by making a contribution in the name of another." Certification (July 12, 2017), Ex. 6 to Compl. [Dkt. # 1-6] ("July 12 Certif.") (declining by a vote of 2 to 2 to make a finding that it did so "knowingly and willfully"). The Commission also voted unanimously to find reason to believe that the ultimate recipients, Thomas and the PAC, had violated the Act. *See id.*

On August 10, 2017, the Office of General Counsel served a subpoena seeking information from the trust that had the relationship with Government Integrity, John Doe 2, and one of its trustees, John Doe 1.[1]  Third General Counsel's Report at 5.  Both refused to respond to the subpoena.  *Id.* at 5–6.

On September 15, 2017, the OGC recommended that the Commission find reason to believe that John Doe 1 and John Doe 2 violated 52 U.S.C. § 30122 and authorize the filing of a civil action to enforce the subpoena.  Third General Counsel's Report at 12–15.

On September 20, 2017, a divided Commission rejected the recommendation by a vote of 3 to 2.  Compl. ¶ 31; Certification (Sept. 21, 2017), Ex. 4 to Compl. [Dkt. # 1-4] ("Sept. 21 Certif.") at 1–2 (stating that Commissioners Walther and Weintraub voted affirmatively for the motion and Commissioners Goodman, Hunter, and Petersen dissented).  Instead, the Commission voted 5 to 0 to authorize the OGC to pursue conciliation with ACU, Now or Never PAC, Thomas, and Government Integrity and to "[t]ake no action at this time on the remaining recommendations" of the OGC.  Sept. 21 Certif. at 2–3.  The agency entered into discussions with the four respondents and ultimately reached a conciliation agreement.  Compl. ¶ 2; Conciliation Agreement, Ex. 3 to Compl. [Dkt. # 1-3].

On October 24, 2017, the Commission voted unanimously to approve the conciliation agreement, Certification (Oct. 24, 2017), Ex. 8 to Compl. [Dkt. # 1-8] ("Oct. 24 Certif."), which

---

[1] The identities of the trustee and trust were known to the FEC by this time, but their identities remain redacted pending an appeal of this Court's ruling in an earlier related case.  *See Doe 1 v. Fed. Election Comm'n*, 302 F. Supp. 3d 160 (D.D.C. 2018) (ruling that the identities of John Doe 1 and 2 may be revealed as part of the agency's publication of its investigative file); *Doe 1 v. Fed. Election Comm'n*, 1:17-cv-02694-ABJ, Notice of Appeal [Dkt. # 51]; Min. Order (Apr. 10, 2018) (granting motion for stay of the Court's order pending appellate review).

included a requirement that the respondents collectively pay a civil penalty of $350,000. Conciliation Agreement at 5; Compl. ¶ 2.

On December 19, 2017, Commissioner Ellen Weintraub, who had voted to enforce the subpoena against John Doe 1 and 2, released a Statement of Reasons concerning the September 20 vote. Statement of Reasons of Commissioner Ellen L. Weintraub, Ex. 1 to Compl. [Dkt. # 1-1]. In Commissioner Weintraub's view, the Commission "failed in [its] mission to follow the money and trace it back to its ultimate source." *Id.* at 4.

On December 20, 2017, Vice Chair Caroline Hunter and Commissioner Lee Goodman, who voted against enforcing the subpoena, issued a separate Statement of Reasons concerning the vote. Statement of Reasons of Vice Chair Caroline C. Hunter and Commissioner Lee E. Goodman, Ex. 5 to Compl. [Dkt. # 1-5]. They concluded that "the unclear state of the law, imminent expiration of the statute of limitations and other legal difficulties weighed in favor of proceeding to conciliation with the named Respondents promptly," rather than jeopardizing the "resolution in hand" with further enforcement actions against other respondents. *Id.* at 5.

### III. Procedural History

On December 22, 2017, plaintiffs filed this lawsuit alleging that the Commission's handling of MUR 6920 violated FECA, 52 U.S.C. § 30109(a)(8), and the APA, 5 U.S.C. § 706. Compl. ¶¶ 39, 46. They challenge the Commission's decision to decline to find "reason to believe" that John Doe 1 and 2 violated the Act, *id.* ¶ 37; its decision not to authorize enforcement of the subpoenas against the Does, *id.* ¶ 45; and its failure to take steps to confirm

that John Doe 1 and 2 were the true source of the contribution to the PAC or otherwise identify the true source. *Id.* ¶¶ 43–44.[2]

On March 30, 2018, the Commission moved to dismiss the complaint pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim. Def.'s Mot. to Dismiss [Dkt. # 22] ("Mot. to Dismiss"). On May 4, 2018, plaintiffs filed their opposition to the motion, Pls.' Opp. to Mot. to Dismiss [Dkt. # 29] ("Pls.' Opp. to Mot. to Dismiss"), and on May 25, 2018, defendant replied to plaintiffs' opposition. Def.'s Reply in Supp. of Mot. to Dismiss [Dkt. # 31].

On September 7, 2018, the Commission also filed a motion for judgment on the pleadings. Def.'s Mot. J. Pleadings [Dkt. # 32]. Three days later, the parties filed a motion to set a briefing schedule, Consent Mot. to Set a Briefing Schedule on Def.'s Mot. J. Pleadings [Dkt. # 33], which the Court granted. Min. Order (Sept. 11, 2018); *see* Pls.' Opp. to Def.'s Mot. J. Pleadings [Dkt. # 34], Def.'s Reply in Supp. of Mot. J. Pleadings [Dkt. # 35]. Both the motion to dismiss and the motion for judgment on the pleadings are ripe for decision.

## STANDARD OF REVIEW

In evaluating a motion to dismiss under either Rule 12(b)(1) or 12(b)(6), the Court must "treat the complaint's factual allegations as true and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citation omitted), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979); *see also Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139

---

2   During this same time frame, the FEC and John Doe 1 and 2 were before this Court litigating whether the FEC could reveal the Does' identities in publishing its investigative file for MUR 6920. *See Doe 1 v. Fed. Election Comm'n*, 302 F. Supp. 3d at 164 (stating that the Does filed suit on December 15, 2017 to enjoin the FEC from making their identities public).

(D.C. Cir. 2011), quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

Under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002). Federal courts are courts of limited jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction."). "[B]ecause subject-matter jurisdiction is 'an Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003), quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

When considering a motion to dismiss for lack of jurisdiction, unlike when deciding a motion to dismiss under Rule 12(b)(6), the Court "is not limited to the allegations of the complaint." *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Rather, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000), citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *see also Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

ANALYSIS

Defendant has asked the Court to dismiss this matter for lack of subject matter jurisdiction or, in the alternative, for failure to state a claim, or to grant it judgment on the pleadings. The Court does not have subject matter jurisdiction over this action because FECA does not provide for judicial review of the Commission's management of an investigation that could grow out of an administrative complaint. Accordingly, the Court will dismiss the complaint pursuant to Rule 12(b)(1), and the motion for judgment on the pleadings will be denied as moot.

**I.    The Federal Election Campaign Act does not provide for judicial review of this action.**

There is a "strong presumption that Congress intends judicial review of administrative action," *Bowen v. Mich. Acad. of Family Physicians,* 476 U.S. 667, 670 (1986), and the APA reflects this principle. *See* 5 U.S.C. § 701(a)(1). But Congress may preclude judicial review of an administrative action by statute. *Id.*; *Tex. All. for Home Care Servs. v. Sebelius,* 681 F.3d 402, 408 (D.C. Cir. 2012). To determine "[w]hether and to what extent a particular statute precludes judicial review," courts must analyze the statute's "express language, . . . the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved." *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345 (1984).

FECA permits private parties to seek to initiate a civil enforcement action by the Commission, and it provides that a party that files an administrative complaint with the Commission and is "aggrieved by an order of the Commission dismissing a complaint filed by

such party" may seek judicial review. 52 U.S.C. § 30109(a)(8)(A).[3] Thus, it takes a dismissal of a complaint within the meaning of subsection (a)(8)(A) to create a justiciable controversy for the Court's resolution.

Plaintiffs argue that the Commission's decision "to take no action on the OGC's recommendation to find reason to believe the [John] Does violated the law" and to close the file was tantamount to a dismissal of their complaint. Pls.' Opp. to Mot. to Dismiss at 19–21; *id.* at 21 n.10. But that characterization is inconsistent with the record of what transpired before the agency, and the language of the statute does not reflect any intent on the part of Congress to provide for judicial review of the agency's exercise of its discretion to decline to pursue the facts beyond the four corners of the administrative complaint.

Plaintiffs filed their administrative complaint against three named respondents and "Unknown Respondent." Compl. ¶ 24; Admin. Compl. ¶ 1. After some investigation, the Commission determined that Government Integrity was the "Unknown Respondent" that provided the money to ACU. *See* July 12 Certif. (certifying unanimous Commission vote to "[s]ubstitute the name Government Integrity LLC in the place of 'Unknown Respondent' in the Commission's previous findings that Unknown Respondent violated 52 U.S.C. § 30122 by making a contribution in the name of another"). After further investigation, the OGC received information indicating where the money came from. It recommended that the Commission find "reason to believe" that a trust that had a relationship with Government Integrity and its trustee also violated the statute, and it asked the Commission to authorize it to seek to enforce a

---

3  It also provides judicial review when the Commission fails to act on an administrative complaint within 120 days of being filed, 52 U.S.C. § 30109(a)(8)(A), but plaintiffs do not argue that the Commission failed to act on their administrative complaint within 120 days. Accordingly, the Court will not analyze the second prong of subsection (a)(8)(A).

subpoena that the Does had resisted. *See* Sept. 21 Certif. But the Commission declined by a vote of 3 to 2, voting unanimously instead to pursue conciliation with the other four respondents. *Id.* This effort resulted in the conciliation agreement, which the Commission voted to approve, and then the Commission voted to close MUR 6920. Oct. 24 Certif.

According to plaintiffs, this series of events constituted a dismissal of their complaint under subsection (a)(8)(A). *See, e.g.*, Compl. ¶¶ 3, 32, 39, 46. But treating the agency's treatment of John Doe 1 and 2 as a "dismissal" would be inconsistent with the text of the statute. Subsection (a)(8)(A) specifies that a claimant may invoke the Court's jurisdiction in just two circumstances: when the Commission "dismiss[es] a complaint" and when it fails to act within 120 days of the filing of a complaint. 52 U.S.C. § 30109(a)(8)(A). The judicial review provision makes no mention of any other investigatory or enforcement actions the Commission may take during the pendency of a complaint, and the Court is not at liberty to read them into the statute. "[W]hen Congress includes one possibility in a statute, it excludes another by implication." *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 392 (2013); s*ee* 2A Sutherland Statutory Construction § 47:23 (7th ed.) (describing the *expressio unius* canon of statutory construction); *see also Cont'l Cas. Co. v. United States*, 314 U.S. 527, 533 (1942) (stating that a "'legislative affirmative description' implies denial of the nondescribed powers"); *Dep't of Air Force v. Fed. Labor Relations Auth.*, 877 F.2d 1036, 1041 (D.C. Cir. 1989) (citing canon of *expressio unius* and stating "[w]e cannot ignore the strong signal that Congress' omission of travel expenses was deliberate, especially in light of the fact that it included official time in the statute"). Congress's specific references in subsection (a)(8)(A) to dismissing complaints and failing to act, coupled with its omission of other administrative actions in the same subsection, supports the conclusion that Congress did not intend for courts to review other actions.

Plaintiffs do not appear to dispute that there was no dismissal of their "complaint" in this case; they couch their brief in terms of "claims," and they object to the fact that the avenue of proving potential claims against potential respondents who were still unknown was shut down prematurely. *See* Pls.' Opp. to Mot. to Dismiss at 1 (stating that "the FEC investigated and resolved Plaintiffs' other allegations" and "dismissed Plaintiffs' *claim* against Unknown Respondent") (emphasis added); *id.* at 7 ("FEC Dismisses *Claim* Against Unknown Respondent(s)") (emphasis added); *id.* at 9 ("[T]he FEC '[c]lose[d] the file' on Plaintiffs' administrative complaint, dismissing all remaining *respondents* and *claims*.") (emphasis added); *id.* (describing Commissions Weintraub's disagreement with the decision "to dismiss Plaintiffs' *claims* against Unknown Respondent(s)") (emphasis added).

But the statute does not provide for judicial review of dismissed "claims" – it speaks in terms of "complaint[s]." 52 U.S.C. § 30109(a)(8)(A). And here the Commission did not dismiss the *complaint*; it "entered into a conciliation agreement with ACU, GI LLC, Now or Never PAC, and James C. Thomas III, . . . fining them $350,000 for their actions," Compl. ¶ 2; *see* Conciliation Agreement, and voted to close the file. *See* 52 U.S.C. § 30109(a)(4)(A)(i). Indeed, section 30109 contemplates a "vote to dismiss" an administrative complaint as a distinct formal procedure. *See* 52 U.S.C. § 30109(a)(1). Thus, on its face, the statute does not provide for judicial review of a decision to foreclose investigation of potential claims that could have arisen out of a complaint.

Plaintiffs cite *Common Cause v. Fed. Election Comm'n*, 729 F. Supp. 148 (D.D.C. 1990), for the principle that "a conciliation agreement that encompasses some but not all claims or respondents does not deprive a court of subject matter jurisdiction over the unaddressed claims or respondents." Pls.' Opp. to Mot. to Dismiss at 15–16. But that ruling, which is not binding

13

on the Court in any event, does not address the situation here.  *Common Cause* involved a conciliation agreement that did not cover all of the claims included in an administrative complaint against a single respondent, whereas here all of the respondents in CREW's complaint – the three named and the one unknown – were in fact included in the conciliation agreement that brought the case to a close.  CREW attempts to avoid this result by suggesting that its administrative complaint included the trustee and the trust that transmitted the funds to Government Integrity as additional potential respondents from the start.  It asserts in its opposition that its administrative complaint "alleged that Unknown Respondent, the 'true source' or sources of that contribution, also violated the FECA by making the contribution in the name of another."  Pls.' Opp. to Mot. to Dismiss at 4, citing Admin. Compl. ¶ 12; *see also* Pls.' Opp. to Mot. to Dismiss at 5 ("Plaintiffs named the true source or sources as respondents, specifically the unknown person or persons who first directed the funds to be contributed to Now or Never PAC and who hid their name beyond the elaborate straw donor scheme.").

But plaintiffs' administrative complaint did not say "true source *or sources*;" it only referred to the "true source" of the funds donated by ACU.  And the administrative complaint did not include the alternative phrasing plaintiffs used in their opposition, such as "unknown respondent(s)" or "unknown respondent or respondents," to indicate that their administrative complaint intended to reach additional individuals or entities.  *See* Admin. Compl.  Indeed, the administrative complaint specifically alleged, "*[t]he* Unknown Respondent provided *to ACU* the $1.71 million it in turn transferred to Now or Never PAC."  Admin. Compl. ¶ 27 (emphasis added).  Plaintiffs cannot expand the scope of their administrative complaint now by reading words into it that were not there.

CREW also tries to avoid the clear statutory limits on this Court's jurisdiction by maintaining that the term it used in its administrative complaint – "true source" – is a term of art under FECA, understood to mean the "person *or persons*" who participate in the contribution. Pls.' Opp. to Mot. to Dismiss at 2 (emphasis added), citing Affiliated Committees, Transfers, Prohibited Contributions, Annual Contribution Limitations and Earmarked Contributions, 54 Fed. Reg. 34,098, 34,105 (1989). But the Federal Register notice cited by CREW does not purport to define the term "true source;" it simply notes that the amended regulation concerning "contributions in the name of another," 11 C.F.R. § 110.4(b), is intended to reach "those who initiate or instigate or have some significant participation in a plan or scheme to make a contribution in the name of another." 54 Fed Reg. at 34,105. Thus, the regulation does not require the Court to read plaintiffs' administrative complaint, which plainly and repeatedly referred to a single unknown respondent, as referring to more than one unknown respondent, particularly when plaintiffs could have easily drafted it to do so.

Plaintiffs cite *United States v. O'Donnell*, 608 F.3d 546 (9th Cir. 2010), for the proposition that the "true source" of a contribution is the person who "made the gift by arranging for his money to finance the donation." Pls.' Opp. to Mot. to Dismiss at 2–3, quoting 608 F.3d at 550. *O'Donnell* does not define the term "true source," but instead explains the purpose of FECA's disclosure requirements – which, to be sure, is to get at straw donor contributions. *See* 608 F.3d at 551. But the fact that the statute seeks to identify straw donors does not resolve the issue before this Court: whether the FEC's actions in the handling of plaintiffs' administrative complaint are subject to judicial review under FECA.

Congress's intent to preclude this action from judicial review becomes evident when subsection (a)(8)(A) is read in the context of the statute's broader enforcement scheme.

15

Congress vested the Commission with exclusive jurisdiction of civil enforcement of FECA, 52 U.S.C. §§ 30106(b)(1), 30107(a), and established a detailed procedure that the Commission must follow in enforcing the Act. *Id.* § 30109. These requirements include:

- a finding by an "affirmative vote of 4" Commissioners that there is "reason to believe" that a person has or is about to violate the Act in order to initiate an investigation, *id.* § 30109(a)(2);

- a finding by an "affirmative vote of 4" Commissioners of "probable cause to believe" that a person has or is about to violate the Act, *id.* § 30109(a)(4)(A)(i);

- that the Commission "attempt, for a period of at least 30 days, to correct or prevent" such a violation through conciliation after a probable cause finding is made, *id.*;

- an "affirmative vote of 4" Commissioners to approve a conciliation agreement, *id.*; and

- a finding by an "affirmative vote of 4" Commissioners of "probable cause to believe that a knowing and willful violation" has or is about to occur before referring a matter to the United States Attorney General, *id.* § 30109(a)(5)(C).

The fact that Congress established a comprehensive enforcement procedure in section 30109, listing multiple administrative actions within it, and in the same section identified only two administrative actions that would be subject to judicial review, demonstrates Congress's intent to limit judicial review to the two specified actions. Thus, there would be no basis to read the judicial review provision to cover administrative actions that do not appear in subsection (a)(8)(A) at all.

Finally, plaintiffs' interpretation of (a)(8)(A) is also contrary to the statute's legislative history, which indicates that Congress sought to achieve compliance first through conciliation. The legislative history reveals that Congress decided to require the Commission to attempt to conciliate a violation before it could seek redress through litigation, 52 U.S.C. § 30109(a)(4)(A)(1), in order to "limit unjustifiable litigation burdens that might otherwise be imposed on the courts and on individuals against whom a complaint has been filed." H.R.

16

12406, H. Rep. No. 94-917, 94th Cong., 2d Sess. at 4 (1976), *reprinted in* FEC, Legislative History of Federal Election Campaign Act Amendments of 1976, at 804 (1977). The House Report indicates that section 30109 was designed to provide "a delicate balance . . . to effectively prevent and redress violations, and to winnow out, short of litigation, insubstantial complaints and those matters as to which settlement is both possible and desirable." *Id.*; *see also* FEC, Legislative History of Federal Election Campaign Act Amendments of 1976, at 912 (1977) ("The 30-day conciliation procedure will provide the necessary buffer to permit the Commission to initially enforce the act by informal methods before instituting court proceedings.").

Here, the Commission's unanimous vote to "[t]ake no action at this time on the remaining recommendations of the Office of General Counsel" – which included a recommendation to pursue further enforcement against the Does – and to enter into the conciliation agreement and "[c]lose the file," reflects its decision to conclude MUR 6920 without further litigation. Sept. 21 Certif.; Oct. 24, 2017 Certif. Reading subsection (a)(8)(A) to treat these actions as "dismissing a complaint" would run counter to the legislative statements that Congress sought to "limit" litigation while still enforcing the Act.[4]

Accordingly, the Court holds that under 52 U.S.C. § 30109(a)(8)(A), it does not have subject matter jurisdiction to review plaintiffs' complaint.

---

4   This is not to suggest that the conciliation agreement, which bars any further action by the Commission, 52 U.S.C. § 30109(a)(4)(A)(i), applies to persons not party to the agreement or violations not covered by it. *See Fed. Election Comm'n v. Nat'l Republican Senatorial Comm.*, 966 F.2d 1471, 1474–75 (D.C. Cir. 1992) (ruling that a conciliation agreement precludes further action against the conciliating parties on the violations covered by the agreement, but not other alleged violations arising out of the same facts). Rather, it was the Commission's vote to "[c]lose the file," Oct. 24 Certif. – which is not subject to judicial review – that ended MUR 6920.

## II. The Administrative Procedure Act does not provide for judicial review of this action.

Plaintiffs argue that if they cannot obtain judicial review under FECA, they may do so under the APA. Pls.' Opp. to Mot. to Dismiss at 30–31. But judicial review is not available under the APA where the applicable statute precludes judicial review. 5 U.S.C. § 701(a)(1). Thus, for the same reasons that judicial review of the challenged enforcement actions is precluded by FECA, it is precluded under APA: because the statute expressly limits review to the two circumstances identified in 52 U.S.C. § 30109(a)(8)(A). *See Filebark v. U.S. Dep't of Transp.*, 542 F. Supp. 2d 1, 6–7 (D.D.C. 2008), *aff'd sub nom. Filebark v. U.S. Dep't of Transp.*, 555 F.3d 1009 (D.C. Cir. 2009) (examining, pursuant to *Block,* 467 U.S. at 345 (1984), the express language of the applicable statute, the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action, and ruling that the statute in that case limited judicial review to those actions explicitly provided for in the statute). FECA provides the basis for judicial review of enforcement actions by the FEC. It sets forth a comprehensive procedure the agency must follow in enforcing the Act, and that procedure expressly limits judicial review of enforcement actions that do not include the actions plaintiffs challenge in this case. *See* 52 U.S.C. § 30109(a)(8)(A). Undertaking judicial review under the APA would enable administrative complainants to make an end run around the scheme established by Congress, and therefore, the APA does not supply a basis for this lawsuit to proceed.

## CONCLUSION

For the foregoing reasons, the Court will grant defendant's motion to dismiss for lack of subject matter jurisdiction and deny as moot its motion for judgment on the pleadings. A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: December 27, 2018